UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DENNIS M. FULFER,

                              Plaintiff,

v.                                                    Case No. 12-CV-464-JPS

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                              Defendant.                ORDER

          The plaintiff, Dennis Fulfer, filed an application for disability

insurance benefits on May 22, 2009, alleging disability resulting from a severe

spinal impairment. (Tr. 20). His application was denied both initially and

upon reconsideration, after which the assigned Administrative Law Judge,

Wayne Ritter (the ALJ), held a hearing on the matter. (Tr.18). On January 2,

2011, the ALJ issued his decision, finding that Mr. Fulfer could perform a

significant number of jobs in the national economy and, therefore, was not

disabled. (Tr. 24–25). The Appeals Council then denied Mr. Fulfer's request

for a review of the ALJ's decision. (Tr. 1–5). Thus, the ALJ's decision—which

had denied Mr. Fulfer's requested benefits—became final.

          Mr. Fulfer has appealed the decision of the Commissioner to this

Court, alleging that the ALJ erred in reaching his decision. (*See* Docket #1).

With the benefit of the parties' submissions (*see* Docket #8, #14, #15), the court

now turns to its analysis and decision.

1.        BACKGROUND

          Mr. Fulfer, who has an eleventh-grade education, worked as a grocery

store stockist from September of 1981 until March 14, 2009. (Tr. 122–31). That

job required frequent physical activity, such as the lifting and carrying of

Case 2:12-cv-00464-JPS   Filed 11/09/12   Page 1 of 9   Document 17

items, and eventually Mr. Fulfer left that job due to what he reports as chronic back pain. (Tr. 122–31, 192).

Indeed, Mr. Fulfer's back treatment history is extensive. As far back as the year 2000, Mr. Fulfer had back pain and received a laminectomy. (Tr. 184). More recently, in July of 2007, he injured his back while lifting items at work and began to see a doctor, Thomas Perlewitz, M.D. (Tr. 183–85). Dr. Perlewitz noted that Mr. Fulfer reported severe back pain (Tr. 183), and diagnosed disc degeneration spondylosis and disc herniation. (Tr. 184–85). Ultimately, Mr. Fulfer received another surgery to treat his symptoms; on February 29, 2008, he underwent a discetomy. (Tr. 183–93).

After that surgery, Mr. Fulfer returned to work but continued to experience pain despite his compliance with his treatment regimen. (Tr. 247, 249). In 2009, he continued to complain to his treating doctor of burning sensations, numbness, and weakness in his lower back and extremities. (Tr. 244, 247, 249). Due to those problems he reported to his treating doctor, Rebecca DeMarco, M.D., that he felt he could not maintain his job, and on May 17, 2009, Mr. Fulfer stopped working and thereafter filed his application for disability insurance benefits. (Tr. 103, 244).

Later in May of 2009, Dr. DeMarco referred Mr. Fulfer to a pain management specialist, Steven Donatello, M.D. (Tr. 237). Dr. Donatello began to see Mr. Fulfer on May 29, 2009, and confirmed that Mr. Fulfer complained of pain in his lower back and lower extremities, which was exacerbated by physical activity. (Tr. 238–39). Mr. Fulfer underwent MRI testing, which showed evidence of problems in his lower back. (Tr. 338–40). Eventually, in late 2009 and into 2010, he began to see another pain management specialist, and engaged in physical therapy to reduce his back pain. (Tr. 384–402).

Case 2:12-cv-00464-JPS   Filed 11/09/12   Page 2 of 9   Document 17

As mentioned above, Mr. Fulfer applied for disability insurance benefits in May of 2009. (Tr. 20). After his application was denied initially and upon reconsideration, the ALJ held a hearing on the matter and issued a decision finding that Mr. Fulfer could perform a significant number of jobs in the national economy and, therefore, was not disabled. (Tr. 18, 24–25). The Appeals Council then denied Mr. Fulfer's request for a review of the ALJ's decision, making the ALJ's decision final. (Tr. 1–5).

Mr. Fulfer then appealed that decision to this Court, alleging that the ALJ erred in reaching his decision. (Docket #1).

2.     DISCUSSION

2.1     Standard of Review

The Court must accept any factual determinations made by the ALJ if such factual determinations are based on substantial evidence. 42 U.S.C. § 405(g). Substantial evidence exists when "a reasonable mind might accept [it] as accurate to support a conclusion." *Powers v. Apfel*, 207 F.3d 431, 434 (internal citations omitted). The Court cannot "decide the facts anew, re-weigh the evidence or substitute its own judgment for that of the Commissioner," but "a mere scintilla of proof will not suffice to uphold the [Social Security Administration's] findings." *Id.* (internal citations omitted).

If, however, the ALJ's decision is based upon a legal error, the Court must overturn that decision. *Eads v. Secretary of Dept. of Health and Human Svcs.*, 983 F.3d 815, 817 (7th Cir. 1993); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

Finally, if the Court concludes that the ALJ failed to build an "accurate and logical bridge" from the evidence to his conclusions, the Court should reverse that decision. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008).

### 2.2    Substantive Analysis

Mr. Fulfer argues that the ALJ erred in three separate ways. First, he argues that the ALJ did not appropriately consider whether Mr. Fulfer's back impairments were medically equivalent to a listed impairment. (Pl.'s Br. 13–16); (Pl.'s Reply 2–7). Second, Mr. Fulfer argues that the ALJ's credibility determination was erroneous. (Pl.'s Br. 16); (Pl.'s Reply 7–8). Finally, Mr. Fulfer alleges that the ALJ's residual functional capacity (RFC) determination was erroneous and not supported by the medical evidence of record. (Pl.'s Br. 9–13, 16–20); (Pl.'s Reply 8–11). The Court will address each of these arguments in turn0.

#### 2.2.1    Listed Impairment

An ALJ must follow a five-step process to determine whether a claimant is disabled. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citing *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995)). First, the ALJ must determine whether the claimant is currently unemployed. *Clifford*, 227 F.3d at 868 (citing *Knight*, 55 F.3d at 313). Second, the ALJ determines whether the claimant has a severe impairment. *Clifford*, 227 F.3d at 868 (citing *Knight*, 55 F.3d at 313). Third, the ALJ evaluates whether that impairment meets an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. I (known as the Listings); if the ALJ determines that the claimant's impairment *does* equal one of the Listings, then the ALJ must conclude that the claimant is disabled. *Clifford*, 227 F.3d at 868 (citing *Knight*, 55 F.3d at 313). If, however, the ALJ determines that a Listing is not met, then he must go on to steps four and five to determine whether the claimant could perform his past work or any other work in the national economy. *Clifford*, 227 F.3d at 868 (citing *Knight*, 55 F.3d at 313).

Here, Mr. Fulfer argues that the ALJ should never have reached steps four and five—rather, he alleges that the ALJ should have determined that his impairments met Listing 1.04, and, therefore, concluded that he was disabled. (Pl.'s Br. 13–16); (Pl.'s Reply 2–7). Listing 1.04 is met when a claimant has a disorder of the spine that results in the compromise of a nerve root or the spinal cord, and also displays one of the following:

(A)     Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss . . . accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or

…

(C)     Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04.

The ALJ concluded that Mr. Fulfer's impairment does not medically equal Listing 1.04. (Tr. 20–21). In reaching that determination, the ALJ stated only that:

No treating or examining physician has indicated findings that would satisfy the severity requirements of any listed impairment. Specifically, the undersigned has considered the claimant's lumbar spine disorder under Listing 1.04 concerning vertebrogenic disorders but concludes that the claimant's condition does not satisfy the severity requirements of this listed impairment, as the record does not document neurological abnormalities, such as motor loss, sensory loss or muscle weakness.

(Tr. 21).

Mr. Fulfer asserts that the ALJ's conclusion is not consistent with the medical evidence presented at the hearing. The government, on the other hand, asserts that Mr. Fulfer did not show evidence that would have been sufficient to establish that his impairment met Listing 1.04.

The Court generally agrees with Mr. Fulfer, and finds that the ALJ committed reversible error. Here, the ALJ did not discuss any medical evidence in determining that Listing 1.04 was not satisfied. In reality, the ALJ offered nothing of substance in reaching that conclusion. The most substantive statement he made in his entire Listing 1.04 analysis was to say that he based his conclusion on the record's lack of documentation of "neurological abnormalities, such as motor loss, sensory loss or muscle weakness." (Tr. 21). But neurological abnormalities are not required for Listing 1.04 to apply. Rather, only Listing 1.04(A) requires any neurological difficulty; Listing 1.04(C), on the other hand, has no such requirement. And, given that Listing 1.04 uses subsections A and C in the disjunctive, the satisfaction of either could potentially qualify Mr. Fulfer's impairments for Listing 1.04.

Thus, the ALJ made an error of law. He determined that the purported lack of evidence regarding neurological abnormalities was dispositive, when in fact it was not. Even in the absence of neurological abnormalities, Mr. Fulfer's impairment could have met Listing 1.04(C). The ALJ's out-of-hand dismissal of the application of that Listing constitutes reversible error.

Moreover, the ALJ failed to build the required "accurate and logical bridge" between the evidence and his conclusion on this topic. *Craft*, 539 F.3d 673. Even if the ALJ had considered Listing 1.04(C) (which it appears he did not, given the Court's discussion above), the ALJ failed to give any reason

Case 2:12-cv-00464-JPS   Filed 11/09/12   Page 6 of 9   Document 17

why he completely disregarded the substantial medical evidence of record in reaching his Listing 1.04 determination. The record in this case is extensive, with many statements of treating doctors. Those doctors detailed what seems to the Court to be a long history of Mr. Fulfer's back problems. But the ALJ dismissed all of those opinions out of hand, saying merely that "[n]o treating or examining physician has indicated findings that would satisfy the severity requirements of any listed impairment." (Tr. 21). In making such a sweeping statement, the ALJ failed to address *any* of the medical evidence directly in relation to his Listing 1.04 analysis.[1] That failure deprives this Court of the opportunity to evaluate his reasoning; instead, the Court is left with only a conclusion with little support other than a conclusory statement that the opinions do not support application of Listing 1.04. The ALJ should have explained why each of those opinions would not support the application of Listing 1.04. Even if he had done so in a quasi summary fashion, the Court would have some basis upon which it could review the ALJ's Listing 1.04 determination. But, as the record stands, the Court cannot do so due to the ALJ's failure to build a logical and accurate bridge to support his determination, which, in and of itself, would be a reversible error.

Having made the above determinations, the Court is obliged to conclude that the ALJ erred in his Listing 1.04 analysis. Because a conclusion contrary to that reached by the ALJ would result in finding Mr. Fulfer disabled, the Court must determine that the error is reversible, and accordingly will reverse the ALJ's decision.

---

[1]The ALJ did discuss the medical evidence more extensively later in his decision, in reaching his RFC determination. (Tr. 21–24). He did not, however, connect that discussion back to his Listing 1.04 determination.

Case 2:12-cv-00464-JPS   Filed 11/09/12   Page 7 of 9   Document 17

### 2.2.2   Remaining Arguments

Mr. Fulfer's remaining two arguments—regarding the ALJ's credibility and RFC determinations—are ultimately irrelevant. Because the Court determined above that the ALJ committed a reversible error, this case must be vacated and remanded. Nonetheless, the Court will briefly address Mr. Fulfer's remaining arguments in hopes that this opinion may be of some guidance, if this matter comes before another ALJ.

To begin, the Court determines that the ALJ's credibility determination was not in error. Here, the ALJ noted that Mr. Fulfer was not credible for a number of reasons, including inconsistency between Mr. Fulfer's alleged onset date and the reports of his physicians, the fact that Mr. Fulfer was fired on his alleged onset date for stealing from his employer, and what seemed to be evidence of improvement in Mr. Fulfer's afflictions. Mr. Fulfer disputes the ALJ's interpretation of the medical evidence, but does not allege that there was any legal error in his analysis. (Pl.'s Reply 7–8). But whether the credibility determination was right or wrong, the Court should not second-guess it where, as here, the ALJ offered substantial evidence for reaching that decision. (Tr. 23). The Court cannot re-weigh the evidence, *Powers*, 207 F.3d at 434 (internal citations omitted), and therefore cannot say that the ALJ's credibility determination was in error. Here, there was certainly more than a scintilla of evidence upon which the ALJ could have based his credibility determination, and, therefore, the Court is obliged to conclude that such portion of the ALJ's analysis was not in error. *Id.* (internal citations omitted).

Similarly, the ALJ's RFC determination was not made in error. On this issue, there was significant medical evidence, much of which contradicted the

opinions most favorable to Mr. Fulfer. (Tr. 23–24). The ALJ examined all of the opinions and provided evidence for his discounting of the opinion of Dr. Arthur Mines, which was favorable to Mr. Fulfer. (Tr. 23–24). The Court will not re-weigh the evidence relied upon by the ALJ. Suffice it to say that the ALJ's RFC determination, as was the case with his credibility determination, relied on more than a mere scintilla of evidence; therefore, the Court cannot conclude that the determination was erroneous. *Powers*, 207 F.3d at 434 (internal citations omitted).

3.      CONCLUSION

Despite the Court's finding that the ALJ's credibility and RFC determinations were not in error, the Court must nonetheless vacate the ALJ's decision for his error in analyzing whether Mr. Fulfer's impairment met Listing 1.04.

Accordingly,

IT IS ORDERED that the opinion of the ALJ be and the same is hereby VACATED and REMANDED for further proceedings consistent with this opinion.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 9th day of November, 2012.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge