# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DENNIS M. FULFER,

                       Plaintiff,

v.                                            Case No. 12-CV-464-JPS

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                      Defendant.                             ORDER

       The Court issued an Order on November 9, 2012, vacating and remanding the decision of the ALJ, below. (Order (Docket #18)). In reaching its decision, the Court determined that the ALJ had not adequately analyzed whether the plaintiff, Dennis Fulfer, suffered from an impairment that meets Listing 1.04, as listed in 20 C.F.R. Pt. 404, Subpt. P, App. I. (Order 6–7). The Commissioner then filed a Motion to Alter or Amend the Court's Judgment on the matter and a supporting brief. (Mot. Alt. (Docket #21); Br. in Supp. (Docket #22)). Mr. Fulfer then filed a brief in response (Resp. (Docket #24)), and the Commissioner informed the Court that he would not file a reply brief (Letter (Docket #25)). With the matter now fully briefed, the Court issues its opinion.

1.      BACKGROUND

       In its prior Order, the Court summarized the ALJ's five-step analysis to determine disability. (Order 4). At the third step of that analysis, the ALJ must determine whether a claimant's impairment meets any one of the listings set forth in 20 C.F.R. Pt. 404, Subpt. P, App. I. If the ALJ determines that a claimant's impairment does, in fact, meet one of the listings, then the

ALJ must conclude that the claimant is disabled and need not move on to the fourth and fifth steps of his analysis. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citing *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995)).

Mr. Fulfer argued before this Court that the ALJ should have done precisely that: found Mr. Fulfer disabled at the third step as meeting Listing 1.04. (Order 5). The Commissioner, of course, disagreed with Mr. Fulfer's position, arguing that Mr. Fulfer had not shown evidence that would have been sufficient to establish that his impairment met Listing 1.04. (Order 6).

The Court, however, sided with Mr. Fulfer. It determined that the ALJ committed reversible error in his Listing 1.04 analysis, because "he offered nothing of substance in reaching [his] conclusion" that Listing 1.04 was not satisfied. (Order 6). As such, the Court found that the ALJ had "failed to build the required 'accurate and logical bridge' between the evidence and his conclusion." (Order 6 (citing *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008))). In its analysis of the matter, the Court mentioned that Listing 1.04(C) does not require any neurological abnormality and went on to say that Mr. Fulfer could have met Listing 1.04(C) in the absence of such abnormalities. (Order 6).

The Commissioner now takes issue with that statement, arguing that Listing 1.04(C) does, indeed, require neurological abnormalities. (Br. in Supp. (Docket #22) 2). The Commissioner also goes further, arguing that, even if the ALJ did not discuss the specific requirements of Listing 1.04(C), such error was harmless because Mr. Fulfer could not have satisfied Listing 1.04(C) in any case. (Br. in Supp. 2). As such, according to the Commissioner, the Court must revise its prior Order and determine that the ALJ did not err and accordingly should affirm the ALJ's opinion. (Br. in Supp. 2).

The Court notes here that reconsideration is appropriate only where there is: (1) a change in controlling law; (2) the availability of new evidence; or (3) a need to correct clear error or prevent manifest injustice. *Whitford v. Boglino*, 63 F.3d 527, 530 (7th Cir. 1995); *see also*, *Geneva International Corp. v. Petrof, Spol, S.R.O.*, 608 F. Supp. 2d 993, 997–98 (N.D. Ill. 2009); *Bank of Waunakee v. Rochester Cheese Sales*, 906 F.2d 1185, 1191 (7th Cir. 1990) *United States v. Petersen Sand & Gravel, Inc.*, 806 F. Supp. 1346, 1360 (N.D. Ill. 1992). There has been no change in controlling law, nor has new evidence become available. Thus, for the Court to reconsider this matter, there must be a need to correct clear error or to prevent manifest injustice. Unfortunately, the Court cannot determine that its prior ruling relied upon clear error or would cause manifest injustice without analyzing its prior ruling in light of the parties' arguments.

The Court's analysis of this matter is two-pronged. First, the Court must determine whether the ALJ's analysis was, in fact, in error. If the Court answers that first question in the negative, determining that the ALJ did not err, then it should amend its prior Order to affirm the ALJ's opinion. If, however, the Court answered the first question in the affirmative, then the Court must turn to the second prong to determine whether the ALJ's error

was ultimately harmless. If it determines that such error was harmless, then it should amend its prior Order to affirm the ALJ's opinion.[1]

First things first: did the ALJ err in his Listing 1.04 analysis?

As the Court noted in its prior Order, Listing 1.04 is met when a claimant has a disorder of the spine that results in the compromise of a nerve root or the spinal cord, and also displays one of the following:

> (A) Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss…accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> . . .
>
> (C) Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively as defined in 1.00B2b.

(Order 5 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04)). Thus, in sum, Listing 1.04(A) requires, at the least:

(1) a disorder of the spine;

(2) that results in the compromise of the nerve root or the spinal cord; and

---

[1]Here, the Court notes that the Commissioner did not assert harmless error in his brief in opposition at the prior stage of litigation. (Comm.'s Br. in Opp. (Docket #14) 10–12) (the closest the Commissioner came to doing so was his argument that Fulfer failed to point to evidence of pseudoclaudication). Thus, perhaps the Court's prior Order cannot adequately be termed to be in clear error—especially since it did not occur to the Commissioner to make such an argument before receiving the Court's prior Order. Nonetheless, because the Court ultimately determines that its prior Order was not in error, it will assume, *arguendo*, that it would have to grant the Commissioner's Motion to Amend if it finds that the ALJ's error was harmless.

(3) evidence of nerve root compression characterized by

- (a) neuro-anatomic distribution of pain,
- (b) limitation of motion of the spine,
- (c) motor loss accompanied by sensory or reflex loss, and
- (d) positive straight leg raising test (if there is involvement of the lower back.

Listing 1.04(C) has very similar requirements:

(1) a disorder of the spine;

(2) that results in the compromise of the nerve root or the spinal cord; and

(3) lumbar spinal stenosis resulting in pseudoclaudication, which is

- (a) established by medical imaging,
- (b) manifests as chronic nonradicular pain and weakness, and
- (c) results in an inability to ambulate effectively.

In analyzing whether Mr. Fulfer satisfied either discussed part of Listing 1.04, he stated the following:

> No treating or examining physician has indicated findings that would satisfy the severity requirements of any listed impairment. Specifically, the undersigned has considered the claimant's lumbar spine disorder under Listing 1.04 concerning vertebrogenic disorders but concludes that the claimant's condition does not satisfy the severity requirements of this listed impairment, as the record does not document neurological abnormalities, such as motor loss, sensory loss or muscle weakness.

(Tr. 21).

Even if the Court incorrectly stated the Listing 1.04 requirements in its prior Order, it still must conclude that the ALJ's statement is not specific enough to satisfy the accurate and logical bridge that he was required to build between the evidence and his conclusion. *Craft*, 539 F.3d at 673. The Court did say, in its prior Order, that Listing 1.04(C) does not require neurological abnormalities. (Order 6). As the Commissioner correctly points out, though, it seems that Listing 1.04's prefix requires the neurological abnormality of compromise of the nerve root or spine; similarly, Listing 1.04(C) requires the neurological abnormality of pseudoclaudication. (Br. in Supp. 2). But, however vague the Court's recitation of Listing 1.04's requirements, the ALJ's findings certainly fare no better. The ALJ discussed "neurological abnormalities, such as motor loss, sensory loss or muscle weakness," while only Listing 1.04(A) mentions motor loss or sensory loss as being required. Thus, the Court's point in its discussion was that the "neurological abnormalities" pointed to by the ALJ were not present in Listing 1.04(C). So, while perhaps the Court did not write as precisely as it might have, its ultimate point stands: the ALJ discussed "neurological abnormalities" as not being present, when it is not entirely clear that those "neurological abnormalities" are required to satisfy Listing 1.04(C). In other words, the ALJ's determination that Mr. Fulfer did not satisfy Listing 1.04(C)

was far too general.[2] Accordingly, the Court is still obliged to conclude that the ALJ's statement regarding this matter was not specific enough to satisfy his obligation to build an accurate and logical bridge between the evidence and his conclusion. *Craft*, 539 F.3d at 673.

This case is also distinguishable from *Scheck v. Barnhart*, 357 F.3d 697, 700–01 (7th Cir. 2004), cited by the Commissioner in support of his contention that the ALJ's opinion adequately articulated his consideration of Listing 1.04. (Br. in Supp. 5). In *Scheck*, the claimant did not contend that he met a

---

[2]The Commissioner urges this Court to look elsewhere in the ALJ's decision to find some indication that the ALJ examined evidence that would support his Listing 1.04 determination. (*See, e.g.,* Br. in Supp. 2, 2 n.1, 3 (citing *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004), which states that "it is proper to read the ALJ's decision as a whole, and…would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five")). There are several reasons why the Court finds his cited case and request unavailing. To begin, *Rice* is distinguishable from this case. In *Rice*, the plaintiff alleged only one specific Listing section (Listing 1.05(C)) before the ALJ, whereas, here, Mr. Fulfer alleged two separate Listing sections (Listing 1.04(A) and Listing 1.04(C)). Thus, here, as compared to *Rice*, the ALJ's non-specificity in his discussion creates confusion as to which Listing section his analysis should be viewed as applying to. Moreover, from the Seventh Circuit's analysis in *Rice*, it is clear that the ALJ's step three analysis in that case was much more substantive than that performed here. *See Rice*, 384 F.3d at 370. The ALJ's analysis in this case seems much more closely aligned with that described as a "superficial analysis" in *Brindisi v. Barnhart*, 315 F.3d 783, 786–87 (7th Cir. 2003), and *Scott v. Barnhart*, 297 F.3d 589, 595–96 (7th Cir. 2002) (though these cases discussed ALJ decisions where the ALJ omitted reference to the applicable listing, the ALJ's statement of the Listing here was little more than perfunctory and his analysis was certainly superficial). Finally, the Court notes that, while it understands that ALJs are under significant pressures, they still must analyze the issues before them. The principle of *Rice* is that ALJs need not duplicatively re-state the evidence before them; it is not that ALJs can set forth a shotgun blast of evidence without adequate analysis in hopes that the reviewing Court will gather the scattered pellets into some semblance of analytic thought. The Court will not engage in such post-hoc gathering of evidence, here; and, even if it did, there still would not be sufficient analysis of the Listing 1.04 requirements to piece together a proper analysis.

Listing and there was apparently *no* evidence in the record that would support such contention—quite different from the situation at hand, in which Mr. Fulfer did assert that he met Listing 1.04 and presented evidence thereof. *Scheck*, 357 F.3d at 700–01.

For these reasons, the Court reaffirms its prior determination that the ALJ's analysis of Listing 1.04 was insufficiently specific and, therefore, was in error.

Next, having once again determined that the ALJ erred in making his Listing 1.04 determination, the Court must determine whether that error was harmless in light of the medical record, as asserted by the Commissioner. (Br. in Supp. 2). The Court determines that it was not.

Mr. Fulfer produced evidence that could satisfy Listing 1.04. He showed spinal problems resulting in nerve root compromise as required by the first two requirements of both Listing 1.04(A) and Listing 1.04(C). (Tr. 183–93). Moreover, he produced medical evidence of positive leg-raising, loss of feeling in his lower right leg, and radicular pain, all of which may satisfy Listing 1.04(A)'s third requirement. (Tr. 36, 183–93, 399-402). Similarly, Mr. Fulfer showed evidence of "foraminal stenotic findings L4-L5 and L5-S1," which could satisfy Listing 1.04(C)'s third requirement. (Tr. 338–40).

Thus, while perhaps on review the ALJ will look at the medical evidence and determine it does not meet Listing 1.04, the Court can also conclude that it is also possible that the ALJ will determine that the medical evidence *does* meet Listing 1.04. This is the very problem with decisions like the one issued by the ALJ here: without at least some analysis of the application of the Listing, the Court cannot determine that the ALJ did, in fact, consider the medical evidence and give Mr. Fulfer a fair shot at

satisfying the Listing. Thus, the ALJ's error was not harmless. Perhaps the ALJ engaged in an adequate analysis of the evidence, but without a more specific record in his opinion the Court cannot be sure. And, the Court having determined that the medical evidence could establish Listing 1.04, it is necessary that a more specific record be provided.

Thus, the Court's prior Order vacating and remanding the ALJ's opinion should stand. As such, the Court will deny the Commissioner's Motion to Alter or Amend the Court's Judgment.

Accordingly,

IT IS ORDERED that the Commissioner's Motion to Alter or Amend the Court's Judgment (Docket #21) be and the same is hereby DENIED; and

IT IS FURTHER ORDERED that the briefing schedule on EAJA fees, which was previously stayed by Order of the Court (Docket #23), be and the same is hereby REINSTATED, and the Commissioner shall have until January 28, 2013, to file a response to plaintiff Dennis Fulfer's Motion for Attorney's Fees (Docket #19).

Dated at Milwaukee, Wisconsin, this 8th day of January, 2013.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge